FILED
2021 MAR 18 PM 2:48
CLERK
U.S. DISTRICT COURT

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF UTAH

| | |
|---|---|
| LISA NELSON,<br><br>　　　　Plaintiff,<br><br>v.<br><br>SALT LAKE COUNTY and LIFE INSURANCE COMPANY OF NORTH AMERICA,<br><br>　　　　Defendants. | MEMORANDUM DECISION AND ORDER GRANTING LINA'S MOTION FOR SUMMARY JUDGMENT, DENYING NELSON'S MOTION FOR SUMMARY JUDGMENT, AND DENYING AS MOOT LINA'S MOTION TO EXCLUDE EXPERT TESTIMONY<br><br>Case No. 2:18-cv-00189-JNP-DBP<br><br>District Judge Jill N. Parrish |

Before the court are (1) Life Insurance Company of North America's (LINA) motion for summary judgment, (2) Lisa Nelson's motion for summary judgment, and (3) LINA's motion to exclude expert testimony. The court GRANTS LINA's motion for summary judgment, DENIES Nelson's motion for summary judgment, and DENIES AS MOOT LINA's motion to exclude expert testimony.

### BACKGROUND

Nelson worked for Salt Lake County as an employee benefits specialist in the human resources department. Two co-workers bullied her intermittently over a period of several years. During a December 10, 2015 meeting, these co-workers bullied her again by implying that Nelson had committed time-card fraud. Nelson had a panic attack and left the meeting. Due to her depression and anxiety caused by her co-workers' harassment, she stopped coming in to work shortly after the December 10, 2015 incident. She applied for a leave of absence under the Family

and Medical Leave Act of 1993 (FMLA). Salt Lake County approved FMLA leave from December 10, 2015 through May 19, 2016.

Salt Lake County had obtained long-term disability coverage for its employees from LINA. The county paid the premiums for this coverage. On May 18, 2016, Nelson applied for long-term disability benefits based on her mental health condition. On August 16, 2016, LINA approved her application, backdating the benefits to March 17, 2016. LINA notified Nelson that the payment of future disability benefits would depend on confirmation of her continuing disability status.

On December 16, 2016, a psychologist on LINA's staff reviewed Nelson's updated medical records. The psychologist determined that Nelson was no longer disabled. Based upon the psychologist's report, LINA issued a claim determination ending disability payments. Nelson appealed LINA's decision to terminate benefits twice. LINA denied both appeals.

On February 21, 2017, LINA notified Salt Lake County that it had terminated Nelson's long-term disability benefits. On March 15, 2017, the county notified Nelson of its intent to terminate her because she had been on medical leave for over 12 months and she was not ready to return to work. On April 15, 2017, Nelson retired. She paid a $115,000 buyout fee to retain her retirement benefits.

Nelson sued LINA and Salt Lake County. Against LINA, Nelson asserted claims for (1) wrongful termination in violation of the Americans with Disabilities Act (ADA), (2) violations of Utah's Public Employee's Long-Term Disability Act (PELTDA), (3) violations of the Employee Retirement Income Act of 1974 (ERISA), and (4) promissory estoppel. Against Salt Lake County, Nelson asserted claims for (1) violations of the ADA, (2) violations of 42 U.S.C. § 1983, and (3) violations of the Utah Protection of Public Employees Act (UPPEA).

LINA moved for summary judgment on all of Nelson's claims against it. Nelson also moved for summary judgment in her favor on her claims against both LINA and Salt Lake County. Finally, LINA moved to exclude Nelson's expert witnesses.

## LEGAL STANDARD

Summary judgment is appropriate when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). The movant bears the initial burden of demonstrating the absence of a genuine dispute of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Once the movant has met this burden, the burden then shifts to the nonmoving party to "set forth specific facts showing that there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). Summary judgment on a claim is required if the party that bears the burden of proof at trial "fails to make a showing sufficient to establish the existence of an element essential to that party's case." *Celotex*, 477 U.S. at 322.

## ANALYSIS

**I.   LINA'S MOTION FOR SUMMARY JUDGMENT**

   *A.   Wrongful Termination*

Nelson asserted a claim for wrongful termination under the ADA against LINA. LINA argues that it is entitled to summary judgment on this claim because it was not Nelson's employer. The court agrees.

The ADA provides: "No covered entity shall discriminate against a qualified individual on the basis of disability in regard to . . . discharge of employees . . . ." 42 U.S.C. § 12112(a). "Covered entity" is defined by the ADA to mean "an employer, employment agency, labor organization, or joint labor-management committee." *Id.* § 12111(2). LINA was never Nelson's employer. Nor do

3

any of the other terms found within the definition of "covered entity" apply to LINA. Accordingly, LINA cannot be liable for wrongful termination under the ADA. *See Riggs v. Am. Heritage Life Ins. Co.*, 60 F. App'x 216, 218 (10th Cir. 2003) (unpublished) (rejecting an ADA claim against an insurance company for its denial of disability benefits because the plaintiff "could not demonstrate [the insurance company was] a 'covered entity'").

Nelson argues that LINA can be held liable under the ADA because "it is unlawful to participate in a contractual or other arrangement or relationship that has the effect of subjecting a covered entity's employee with a disability to discrimination." ECF No. 74 at p. 27. But Nelson misreads the ADA. The Act provides that a covered entity shall not "discriminate against a qualified individual on the basis of disability." 42 U.S.C. § 12112(a). The ADA construes the phrase "discriminate against a qualified individual" to include "participating in a contractual or other arrangement or relationship that has the effect of subjecting a covered entity's qualified applicant or employee with a disability to the discrimination prohibited by this subchapter." *Id.* § 12112(b). In other words, the ADA prohibits a covered entity from participating in a contractual relationship that has the effect of discriminating against a disabled person. But under the terms of the Act, only the covered entity can be liable for participating in the contractual relationship. The ADA does not impose liability on the other party to the contract. Thus, LINA cannot be liable based upon a contractual relationship with a covered entity.

Nelson also argues that LINA can be held liable for discrimination under the ADA because she alleges that LINA was an agent of a covered entity, Salt Lake County. But Nelson does not cite any provision of the ADA that makes an agent of a covered entity liable for violations of the Act. Nor does Nelson's reference to common-law agency principles make sense in this context. Although a principal may be vicariously liable for an agent's conduct under certain circumstances,

4

RESTATEMENT (THIRD) OF AGENCY § 7.03 (2006), liability does not flow from the principal back to the agent, *see id.* § 7.01 (an agent is subject to liability only for his or her own conduct).

Therefore, the court grants summary judgment in favor of LINA on Nelson's ADA claim for wrongful termination.

    B.    *PELTDA Claim*

Nelson also asserts that LINA violated provisions of PELTDA by paying her 60% of her salary rather than 100%. LINA argues that the court should grant summary judgment in its favor because PELTDA does not apply to this case. The court agrees.

PELTDA is a program created by the Utah Legislature to provide long-term disability benefits to eligible public employees. *See* UTAH CODE § 49-21-103 & -105. Certain teachers, public safety service employees, firefighter service employees, and judges are eligible for coverage. *Id*. § 49-21-102(2). Moreover, certain public safety service employees must be covered either by PELTDA or "a substantially similar long-term disability program." *Id.* § 49-21-201(2); *accord Educators Mut. Ins. Ass'n v. Evans*, 258 P.3d 598, 604 (Utah Ct. App.2011) (police officer was covered by a private plan that was substantially similar to PELTDA). Other employers have the option to provide coverage under PELTDA. UTAH CODE § 49-21-201(4). But these optional participants in the program are not required to provide substantially similar long-term disability coverage if they opt out of PELTDA. *Id.*

Here, LINA provided undisputed evidence that Nelson's employer did not participate in PELTDA. Instead, Salt Lake County obtained long-term disability benefits from a private provider. Nelson argues that LINA should be held liable for violating PELTDA because the benefits it provided to her were not substantially similar to the disability benefits provided to PELTDA participants.

5

The court disagrees with Nelson for two reasons. First, Nelson has not presented any evidence that she was a public safety service employee as defined by Utah Code § 49-21-201(2). Only this category of public employees must be covered by PELTDA or a substantially similar plan. Second, LINA is not the proper party to sue for any violation of the substantially-similar-program provision. The statute requires the *employer* to provide a substantially similar long-term disability program. Thus, any claim for a violation of this provision must be made against Salt Lake County, not a private insurer.

Accordingly, the court grants summary judgment in favor of LINA on Nelson's PELTDA claim.

C. *ERISA Claims*

Nelson asserted a number of claims against LINA based upon provisions of ERISA. LINA argues that these claims fail because the long-term disability plan was a government plan exempt from ERISA. The court agrees.

A "government plan" is exempt from the provisions of ERISA. 29 U.S.C. § 1003(b). "The term 'governmental plan' means a plan established or maintained for its employees by the Government of the United States, by the government of any State or political subdivision thereof, or by any agency or instrumentality of any of the foregoing." *Id.* § 1002(32). "The definition of a 'governmental plan' . . . creates a disjunctive standard: 'a plan need only be established *or* maintained by a governmental entity in order to constitute a governmental plan.'" *Graham v. Hartford Life & Acc. Ins. Co.*, 589 F.3d 1345, 1353 (10th Cir. 2009) (citation omitted).

LINA does not allege that Salt Lake County "maintained" Nelson's long-term disability plan. Instead, LINA argues that Salt Lake County, a political subdivision of the State of Utah, "established" the plan. In *Graham v. Hartford Life & Acc. Ins. Co.*, 589 F.3d 1345, 1353 (10th Cir.

6

2009), the Tenth Circuit held that a disability benefits plan had not been established by the United States Postal Service because it "did not contribute payments toward the disability insurance premiums; rather, its [employees] authorized deductions from their paychecks to pay for them." In so holding, the Tenth Circuit cited with approval authority from other circuits holding that a government employer's payment of premiums is sufficient to show that the government employer established the plan. *See Gualandi v. Adams*, 385 F.3d 236, 244 (2d Cir. 2004) ("[E]xclusive governmental funding is enough to constitute governmental establishment of a plan."); *Fromm v. Principal Health Care of Iowa, Inc.*, 244 F.3d 652, 653 (8th Cir. 2001) (per curiam) ("Because the City paid the insurance premiums under the health care plan selected by the employees, the plan is deemed to be established and maintained by the City."). Other circuits have similarly held that if a government employer pays the premiums for a plan, it is a government plan exempt from ERISA. *See Silvera v. Mut. Life Ins. Co. of New York*, 884 F.2d 423, 426 (9th Cir. 1989).

Here, Salt Lake County is listed as the policy holder for the LINA long-term disability plan. Under the plan documents, the county is responsible for paying the premiums for the plan. Thus, the long-term disability plan administered by LINA is a governmental plan exempt from ERISA because Salt Lake County established the plan by paying for it. Accordingly, LINA is entitled to summary judgment on all of Nelson's claims under ERISA.

D.   *State-Law Claims*

The parties dispute whether Nelson pled any additional claims. Nelson argues that she pled three state-law claims in the alternative to relief under ERISA: (1) breach of fiduciary duty, (2) fraud, and (3) promissory estoppel. LINA counters that Nelson pled these claims under provisions of ERISA. Thus, LINA contends that these claims fall with the other ERISA claims.

The court agrees with LINA that Nelson did not plead an independent state-law breach of fiduciary duty claim. In the section of the Second Amended Complaint titled "Breach of Fiduciary duty [sic]," Nelson quotes directly from the section of ERISA entitled "Liability for breach of fiduciary duty." *See* 29 U.S.C. § 1109. The complaint clearly indicates that the bases for this claim are the fiduciary duties outlined in ERISA. *See id.* § 1104 (describing the duties owed by a fiduciary under an ERISA plan). Thus, Nelson did not plead a common-law breach of fiduciary duty claim.

The court also concludes that Nelson did not plead a common-law fraud claim. Nelson titled a section of the Second Amended Complaint: "Breach of fiduciary duty based on fraud and SEC. 519 of ERISA." This section appears to be merely a subset of her ERISA fiduciary duty claim. Nelson even cites a provision of ERISA regarding liability for breach of a co-fiduciary. *See id.* § 1105. And to the extent that Nelson intended to plead an independent fraud claim, she relies on a provision of ERISA that prohibits false statements in connection with the marketing or sale of a covered plan. *See id*. § 1149. Thus, even if Nelson had pled a separate fraud claim, the claim would be based on ERISA and would fall with her other ERISA claims.

Nelson, however, did plead a separate promissory estoppel claim. Nelson alleged that LINA promised that she had been approved for long-term disability payments for the period of time that she was disabled and could not work. Nelson contends that LINA broke this promise when it subsequently determined that she was no longer disabled and terminated her benefits.

LINA is entitled to summary judgment on the promissory estoppel claim because "promissory estoppel is available only to a party who has no right to relief under an enforceable contract." *E & H Land, Ltd. v. Farmington City*, 336 P.3d 1077, 1086 (Utah Ct. App. 2014); *accord Mile High Indus. v. Cohen*, 222 F.3d 845, 859 (10th Cir. 2000) ("'[P]romissory estoppel' is an

8

affirmative cause of action or defense, which arises in instances where no formal contract exists . . . ."). Here, the insurance contract governs Nelson's right to receive disability payments. She cannot bypass the contract by asserting an equitable claim for promissory estoppel.

In short, Nelson did not plead separate claims for breach of fiduciary duty or fraud. And although she pled a claim for promissory estoppel, LINA is entitled to summary judgment on this claim. Thus, none of the alleged state-law claims remain for trial.

  E. *Conclusion*

The court grants summary judgment in favor of LINA on all of Nelson's claims against it.

**II. NELSON'S MOTION FOR SUMMARY JUDGMENT**

Nelson filed a motion for summary judgment, arguing that she should prevail as a matter of law on her claims against both LINA and Salt Lake County. Because the court grants summary judgment in favor of LINA on all claims against it, the court denies Nelson's motion as to the LINA claims. The court addresses below Nelson's assertions that she is entitled to summary judgment against Salt Lake County on her ADA claims, her § 1983 claim, and her claim under the UPPEA.

  A. *ADA Claims*

Nelson asserts three claims under the ADA: (1) failure to accommodate, (2) wrongful termination, and (3) hostile work environment.

    1) Failure to Accommodate

The ADA prohibits an employer from discriminating against an employee by failing to make "reasonable accommodations to the known physical or mental limitations of an otherwise qualified individual with a disability." 42 U.S.C. § 12112(b)(5)(A). A plaintiff asserting a failure to accommodate claim has a prima facie burden to show (1) that he or she "is a qualified individual

with a disability," (2) the employer was aware of the disability, and (3) the employer "failed to reasonably accommodate the disability." *McFarland v. City & Cty. of Denver*, 744 F. App'x 583, 586 (10th Cir. 2018) (unpublished). A disabled person is a qualified individual under the ADA if the individual, "with or without reasonable accommodation, can perform the essential functions of the employment position that such individual holds or desires." 42 U.S.C. § 12111(8).

An employer can fail to make a reasonable accommodation if it does not engage in the interactive process. *See Smith v. Midland Brake Inc., a Div. of Echlin, Inc.*, 180 F.3d 1154, 1172 (10th Cir. 1999). The interactive process "includes good-faith communications between the employer and employee." *Id.* A lack of good faith can be demonstrated by "[a] party that obstructs or delays the interactive process" or "fails to communicate, by way of initiation or response." *Id.*

Nelson argues that Salt Lake County failed to implement reasonable accommodations for her disability. She asserts that the county should have offered her a vocational rehabilitation program to ease her back into work, additional leave time, flexible work hours, and the option to telework. Nelson also contends that Salt Lake County failed to engage in the interactive process regarding these potential accommodations because the county refused to inform her treating physician as to what her work environment would be like if she returned to work.

To prevail on her summary judgment motion for her failure to accommodate and failure to engage in the interactive process causes of action, Nelson has to show that she would prevail as a matter of law on each element of her claims. The court concludes that Nelson is not entitled to summary judgment in her favor because she has not shown the absence of any dispute of material fact as to Nelson's ability to perform the essential functions of her job with reasonable accommodations.

First, the question of whether the suggested accommodations were reasonable is a classic jury question. Nelson has not pointed to undisputed evidence conclusively establishing the reasonableness of the accommodations she requested. Nor has she shown that her proposal for additional leave time was reasonable as a matter of law. A temporary leave of absence can be a reasonable accommodation. *See Robert v. Bd. of Cty. Comm'rs*, 691 F.3d 1211, 1217–18 (10th Cir. 2012); *Cisneros v. Wilson*, 226 F.3d 1113, 1129 (10th Cir. 2000). But there are two limits on the bounds of reasonableness for a leave of absence or a modified job assignment. *Robert*, 691 F.3d at 1218. First, "[t]he employee must provide the employer an estimated date when she can resume her essential duties." *Id.* Second, the request for leave or modified duties "must assure an employer that an employee can perform the essential functions of her position in the 'near future.'" *Id.* Nelson has not presented evidence of the length of time she needed to resume her regular work duties. Nor has she established that she could have returned to work in the near future.

Second, Nelson has not established that she could have returned to work and performed her essential work duties if Salt Lake County had afforded her the suggested accommodations. She has not pointed to any medical opinions that she could have returned to work with accommodations. Nor would such opinion testimony conclusively establish this fact.

Because Nelson has not established the absence of material fact as to an essential element of her failure to accommodate and failure to engage in the interactive process claims, she is not entitled to summary judgment.

    2)     Wrongful Termination

"[T]o qualify for relief under the ADA, a plaintiff must establish (1) that [s]he is a disabled person within the meaning of the ADA; (2) that [s]he is qualified, that is, with or without reasonable accommodation (which [s]he must describe), [s]he is able to perform the essential

11

functions of the job; and (3) that the employer terminated [her] because of [her] disability." *White v. York Int'l Corp.*, 45 F.3d 357, 360–61 (10th Cir. 1995).

Like Nelson's failure to accommodate and failure to engage in the interactive process claims, her wrongful termination claim requires her to prove that, with reasonable accommodations, she was qualified to perform the essential functions of her job. As discussed above, she has not shown the absence of any dispute of material fact on this element. For the same reasons, therefore, Nelson is not entitled to summary judgment on her wrongful termination claim.

### 3) Hostile Work Environment

"[T]he elements of [a hostile work environment] claim are: (1) the plaintiff is a member of a protected group (i.e., he is 'disabled' as defined by the ADA); (2) the plaintiff was subject to unwelcome harassment; (3) the harassment was based on the alleged disability; and (4) due to the harassment's severity or pervasiveness, the harassment altered a term, condition, or privilege of the plaintiff's employment and created an abusive working environment." *Callahan v. Commc'n Graphics, Inc.*, 657 F. App'x 739, 746–47 (10th Cir. 2016) (unpublished).

Nelson asserts that she was subjected to a hostile work environment because her co-workers bullied her over false allegations of timecard abuse. Nelson further contends that Salt Lake County knew about the abuse but did nothing to stop it. Nelson, however, has not cited any evidence establishing that her harassment by her co-workers was based on her disability. She only asserts that her co-workers filed baseless complaints against her. Absent undisputed evidence establishing that her co-workers bullied her because of her disability, Nelson is not entitled to summary judgment on her hostile work environment claim.

B.      *§ 1983 Claim*

"Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law . . . ." 42 U.S.C. § 1983. A governmental body may also be held liable under § 1983 if the plaintiff's action is based on "a policy statement, ordinance, regulation, or decision officially adopted and promulgated by that body's officers." *Monell v. Dep't of Soc. Servs. of City of New York*, 436 U.S. 658, 690 (1978). Nelson argues that she is entitled to summary judgment on her § 1983 action under two distinct theories.

First, Nelson asserts that Salt Lake County violated her Due Process rights when it fired her. Tenured public employees have a property right to their continued employment and cannot be deprived of that right without procedural due process. *Cleveland Bd. of Educ. v. Loudermill*, 470 U.S. 532, 538–39 (1985); *Carnes v. Parker*, 922 F.2d 1506, 1509–10 (10th Cir. 1991). A protected employee is entitled to both pre-termination and post-termination procedures that afford the employee notice of the reasons for the termination and an opportunity to be heard. *Loudermill*, 470 U.S. at 546. Nelson, however, does not explain how the procedures afforded by Salt Lake County were inadequate. Thus, she has not shown that she is entitled to summary judgment on this theory.

Second, Nelson contends that Salt Lake County violated the ADA. But Nelson merely replicates the ADA arguments discussed earlier. For the same reasons that Nelson is not entitled to summary judgment on her ADA claims, she is not entitled to summary judgment on her § 1983 claims that duplicate those causes of action.

13

C.     UPPEA Claim

The UPPEA forbids government employers from taking an "adverse action against an employee because the employee . . . communicates in good faith . . . a violation or suspected violation of a law, rule, or regulation . . . ." UTAH CODE § 67-21-3(1)(a). "To plead a claim under this Act, Plaintiff must show that (1) [she] communicated in good faith the existence of waste of public funds, property, or manpower or a violation of a law or regulation and (2) [her] employer took an adverse employment action against [her] because of said communication." *Johnson v. City of Murray*, 909 F. Supp. 2d 1265, 1296 (D. Utah 2012) (alterations in original) (citation omitted).

Nelson asserts that she told Salt Lake County that her absences attributable to her long-term disability designation did not count as unauthorized absences. She also expressed concern that the county had not provided information to her doctor about her job description and that the county had failed to facilitate her return to work on a temporary basis. Nelson argues that these statements constitute communications about violations of the law and that she is entitled to summary judgment on her UPPEA claim.

The court denies summary judgment in Nelson's favor because she has not shown the absence of any dispute of material fact on the issue of causation. Nelson has not cited evidence establishing that Salt Lake County fired her because of these communications. Indeed, Nelson does not address the issue of causation in her briefing.[1]

---

[1] Salt Lake County argues that Nelson cannot prevail on her UPPEA claim because she did not file a notice of claim with the county clerk within a year of when her claim arose. *See* UTAH CODE § 63G-7-401(2), -402. Nelson counters that UPPEA claims are exempt from the notice of claim requirement. See *Id.* § 63G-7-203. But Nelson fails to mention that the statute exempting UPPEA claims did not go into effect until May 8, 2018. 2018 UTAH LAWS Ch. 178 (S.B. 199). This raises significant questions as to whether the 2018 law retroactively relieved Nelson of the

### III.  LINA'S MOTION TO EXCLUDE EXPERT TESTIMONY

LINA moved to strike the testimony of several of Nelson's experts. Because the court grants summary judgment on all claims against LINA, its motion to exclude this testimony is moot.

### CONCLUSION AND ORDER

For the reasons stated above, the court orders as follows:

(1) The court GRANTS LINA's motion for summary judgment. ECF No. 65.

(2) The court DENIES Nelson's motion for summary judgment. ECF No. 83.

(3) The court DENIES AS MOOT LINA's motion to exclude expert testimony. ECF No. 80.

Signed March 18, 2021.

BY THE COURT

_____
Jill N. Parrish
United States District Court Judge

---

notice-of-claim requirement. Because of the lack of briefing on this issue, and because the court denies summary judgment on other grounds, the court declines to address this issue at this juncture.