FILED
2022 MAR 30 PM 1:38
CLERK
U.S. DISTRICT COURT

## IN THE UNITED STATES DISTRICT COURT
### FOR THE DISTRICT OF UTAH

| | |
|---|---|
| LISA NELSON,<br><br>      Plaintiff,<br><br>v.<br><br>SALT LAKE COUNTY,<br><br>      Defendant. | MEMORANDUM DECISION AND ORDER GRANTING IN PART AND DENYING IN PART MOTION FOR SUMMARY JUDGMENT<br><br>Case No. 2:18-cv-00189-JNP-DBP<br><br>District Judge Jill N. Parrish |

Before the court is defendant Salt Lake County's motion for summary judgment, ECF No. 108, which the court GRANTS IN PART and DENIES IN PART. The court grants summary judgment on plaintiff Lisa Nelson's claims for (1) violations of the Utah Protection of Public Employees Act (UPPEA) and (2) hostile work environment under the Americans with Disabilities Act of 1990 (ADA). The court denies summary judgment on Nelson's claims for (1) violations of her due process rights under the Fourteenth Amendment, (2) failure to accommodate under the ADA, and (3) wrongful termination under the ADA.

## BACKGROUND

Nelson worked for Salt Lake County from 1990 to 2017. From 2005 through 2017, she worked as an employee benefits specialist in the human resources department. Nelson suffers from a lifelong bipolar disorder.

Beginning in 2003, two co-workers intermittently bullied Nelson at work. These co-workers sometimes harassed Nelson through false accusations of timecard fraud. In 2009, for example, one of the co-workers, who then worked in Salt Lake County's auditing department,

accused Nelson of timecard fraud. An official investigation failed to uncover wrongdoing. Due to allegations that the co-worker was targeting Nelson, the county barred the co-worker from reviewing Nelson's timecards. The co-workers' harassment negatively affected Nelson's mental health and exacerbated her bipolar disorder.

In 2010, Nelson asked for work accommodations under the ADA for her bipolar disorder and for what her doctor diagnosed as "Partner Relational Problems." Based upon the information that she provided, Salt Lake County determined that she was a qualified individual under the ADA. The county accommodated Nelson's condition by affording her up to three absences per month to deal with her bipolar disorder. With this accommodation, Nelson was able to perform her job between 2010 and 2015.

Around June 2015, Nelson's two co-workers, who worked for the payroll department at this time, began to bully her again after the three of them were assigned to work on a project together. During this period of time, Nelson's manager received multiple complaints about her job performance. Nelson suspected that the complaints were initiated by one or both of the co-workers because they originated from the payroll department. While discussing the complaints with Nelson, her manager suggested that she consider applying for another position. Then, during a December 10, 2015 meeting, the co-workers bullied Nelson by implying that she had committed timecard fraud. Nelson had a panic attack and left the meeting. Due to her depression and anxiety caused by her co-workers' harassment, Nelson stopped coming in to work for about six weeks. She then worked part-time from February 1, 2016, until sometime in early March 2016, when she stopped working again.

Nelson applied for a leave of absence under the Family and Medical Leave Act of 1993 (FMLA). Salt Lake County approved FMLA leave through May 19, 2016. Nelson included a form

completed by her treating physician in her January 2016 application for FMLA leave. On the form, her physician stated that Nelson's illness was "triggered by being forced to work with fellow employees who previously made accusations which were later exonerated [sic]." The physician stated that Nelson wanted to return to work and advised that "[d]ue to interpersonal conflict, judgment should be used in minimizing unnecessary interactions with employees who have previously bullied [Nelson]."

Based on her mental health condition, Nelson applied for long-term disability benefits from the Life Insurance Company of North America (LINA), which provided disability benefits to Salt Lake County employees. On August 18, 2016, LINA approved her application, backdating the benefits to March 17, 2016. LINA notified Nelson that the payment of future disability benefits would depend on confirmation of her continuing disability status. On December 16, 2016, a psychologist on LINA's staff reviewed Nelson's updated medical records. The psychologist determined that Nelson was no longer disabled. Based upon the psychologist's report, LINA issued a claim determination ending disability payments. Around January 4, 2017, Nelson appealed the termination of benefits. On March 6, 2017, LINA denied the appeal. Nelson submitted a second appeal, which was also denied on January 8, 2018.

During the time that Nelson was on FMLA leave and long-term disability leave, Nelson had several communications with Salt Lake County employees about returning to work. In January 2016, Nelson sent emails to a county employee describing how the bullying and accusations of her co-workers negatively affected her mental health and made it difficult to do her job. In a January 31, 2016 email, the county employee acknowledged that Nelson was being harassed by her co-workers and opined that Nelson's supervisor needed to stand up for her. The county employee

stated that she was confident that Nelson could recover and return to work if her supervisor showed some sympathy and understanding regarding the bullying perpetrated by Nelson's co-workers.

In June 2016, Nelson had a conversation via text with a Salt Lake County human resources employee about returning to work. When Nelson asked the human resources employee whether she really wanted Nelson to return to work, the employee responded that Nelson needed to be "100 percent" to return to work because the county could not afford for her to take time off for doctors' appointments. The human resources employee further stated that she was worried about Nelson's leave and that she would have to discipline Nelson if she took time off in the future for doctors' appointments.

In November 2016, Nelson texted a human resources employee and asked to schedule a time to meet. The employee responded: "Like I mentioned before, I don't want you to stress over a return to work until your doctor releases you to work." The supervisor then stated that she could schedule a meeting about a week later, adding: "[j]ust bring your doctor's medical release with you." Nelson interpreted this response to mean that medical release to return to work was a prerequisite to discussing a potential return to work.

Nelson testified that around this time she also attempted to reach out to Salt Lake County employees to find out whether she would be working with the co-workers who had bullied her if she returned. Nelson also wanted to know if she could return to her office, and if not, where her workspace would be. Finally, she requested an accurate and updated job description to provide to her treating physician so that he could decide whether to release her to return to work. Nelson stated that county employees declined to engage with her or answer these questions until she received a medical release from her doctor indicating what her work restrictions would be. Nelson further testified that her doctor would not give her a release to return to work because he did not

have enough information about the environment that she would return to, whether Nelson would be expected to interact with the co-workers that had bullied her, or a description of any changes to Nelson's job description.

On February 10, 2017, LINA notified Salt Lake County of its December 16, 2016 decision to terminate long-term disability benefits. On February 21, 2017, the county issued a notice to Nelson that it intended to terminate her employment. In the notice, Salt Lake County faulted Nelson for failing to notify it of LINA's decision to terminate long-term disability benefits and for not contacting the county to discuss her return to work. Due to the denial of long-term disability benefits, Salt Lake County asserted that Nelson had been on an "unauthorized leave" in violation of the county's policies. Salt Lake County stated its intent to terminate Nelson effective March 7, 2017, due to Nelson's purported unauthorized leave. The notice stated that on March 2, 2017, Nelson could attend a meeting to "be heard, provide relevant information, and express why discipline is not appropriate." At Nelson's request, the meeting was rescheduled for March 8, 2017. Nelson attended the hearing and argued that she should not be terminated for unauthorized leave.

On March 13, 2017, Salt Lake County sent two letters to Nelson. In the first letter, the county stated that it was rescinding its February 21, 2017 notice of intent to terminate her employment. The letter went on to state that Salt Lake County had decided instead to "move forward with the 30 day notification process consistent with [long-term disability] policy." The second letter, also dated March 13, 2017, purported to inform Nelson of the county's policies regarding long-term disability leave. This letter stated that the county was notifying Nelson that she was "eligible to remain on the County payroll in a medical leave-without-pay status for a maximum of twelve months from the last day worked." The letter went on to state: "Please be advised that your employment status with Salt Lake County was scheduled to end with effect on

5

March 1, 2017, but has been extended to April 15, 2017." The letter then informed Nelson of Salt

Lake County's policies for continuing medical, dental, and life insurance coverage after her April

15, 2017 termination.

On March 15, 2017, Salt Lake County sent a second notice of intent to terminate Nelson's

employment. This second notice stated:

> In accordance with Salt Lake County Human Resources Policy
> 4-1000: Long Term Disability, we are notifying you of your pending
> termination date from the Human Resources Division. Applicants of
> Long Term Disability are granted one year of Leave Without Pay
> from their last day worked. If employees do not return to work
> during that year, they will be terminated.
>
> Your last day worked with Salt Lake County was March 1, 2016.
> Based upon policy 4-1000, we are unable to continue your leave
> without pay status and intend to terminate your employment with
> Salt Lake County on April 15, 2017. This decision is based upon you
> exhausting your leave without pay provisions and your present
> inability to return to work or perform the essential functions of your
> former position. If you have a medical release to return to work,
> please provide the information to me no later than March 31, 2017.
>
> Should your return to work require a reasonable accommodation
> under the Americans with Disability Act (ADA), please contact
> Alison Smith, ADA Coordinator.

Unlike the county's first notice of intent to terminate, this second notice made no mention of a

pretermination hearing in which Nelson could contest her termination. Salt Lake County attached

a copy of its Human Resources Policy 4-1000: Long Term Disability Program to the second notice.

On March 31, 2017, Nelson notified Salt Lake County that she would retire on April 16,

2017. After she retired, she paid a $115,000 buyout fee to the county to retain her retirement

benefits.

In August 2017, Nelson filed a charge of disability discrimination with the U.S. Equal

Employment Opportunity Commission (EEOC). On November 30, 2017, the EEOC notified

Nelson that it had dismissed her charge and that she could file a lawsuit. On March 1, 2018, Nelson sued Salt Lake County, asserting claims for (1) violations of UPPEA, (2) damages under § 1983, and (3) violations of the ADA. The county filed a motion for summary judgment on all of these claims.

## LEGAL STANDARD

Summary judgment is appropriate when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). The movant bears the initial burden of demonstrating the absence of a genuine dispute of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Once the movant has met this burden, the burden then shifts to the nonmoving party to "set forth specific facts showing that there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). Summary judgment on a claim is required if the party that bears the burden of proof at trial "fails to make a showing sufficient to establish the existence of an element essential to that party's case." *Celotex*, 477 U.S. at 322.

## ANALYSIS

## I.      THE UPPEA CLAIM

Nelson asserted a claim against Salt Lake County for violations of UPPEA, which prohibits state government employers from taking adverse actions against employees who report in good faith waste, violations of the law, mismanagement, abuse of authority, or unethical conduct. UTAH CODE § 67-21-3(1)(a). Salt Lake County argues that it is entitled to summary judgment on this claim because it is barred by the applicable statute of limitations. The court agrees that the UPPEA claim is barred either by the statute of limitations or by Nelson's failure to exhaust administrative remedies.

There are two potential limitations periods applicable to claimed violations of UPPEA. Generally, an employee must bring a civil action "within 180 days after the occurrence of the alleged violation of" UPPEA. UTAH CODE § 67-21-4(1)(a). Nelson did not comply with this 180-day limitations period. The latest possible date on which the alleged violation of UPPEA occurred was April 16, 2017—the day that Nelson alleges that she was constructively terminated from her position. *See Zimmerman v. Univ. of Utah*, 417 P.3d 78, 85 (Utah 2018) (depending on the theory of damages asserted by the plaintiff, a UPPEA claim may accrue either when a notice of termination is issued or when the employee is actually terminated). But Nelson did not file this lawsuit until March 1, 2018—well after the 180-day limitations period had run.

If, however, a political subdivision of the state adopts an ordinance establishing an independent personnel board, as described in Utah Code § 67-21-3.6, a different limitations period applies. In that situation, an employee may not file a civil action asserting a UPPEA claim until he or she exhausts administrative remedies before the personnel board. UTAH CODE § 67-21-4(1)(b)(i)(B). The employee must then file any lawsuit "within 180 days after the day on which the employee has exhausted administrative remedies." *Id.* § 67-21-4(1)(b)(i)(A). The parties have not provided any evidence as to whether Salt Lake County has established an independent personnel board. But if it has, Nelson has not cited any evidence that she exhausted her administrative remedies for the UPPEA cause of action by filing a claim with any such body. Thus, even if Salt Lake County has established a personnel board, the court would lack subject matter jurisdiction to hear Nelson's UPPEA claim because she failed to exhaust her administrative remedies. *See Ramsay v. Kane Cty. Hum. Res. Special Serv. Dist.*, 322 P.3d 1163, 1166 (Utah 2014) ("[T]he requirement that a party exhaust administrative remedies before seeking judicial review is a matter of subject matter jurisdiction.").

Nelson argues that Salt Lake County cannot prevail on its statute of limitations or failure to exhaust affirmative defenses because, although the county pled these affirmative defenses, it failed to plead them with sufficient particularity. The court rejects this argument as untimely. The proper vehicle to challenge the sufficiency of the pleadings for an affirmative defense is a motion to strike under Rule 12(f) of the Federal Rules of Civil Procedure. "Under Rule 12(f)[,] insufficient defenses may be stricken from pleadings where they 'cannot succeed, as a matter of law, under any circumstances.'" *Devs. Sur. & Indem. Co. v. Network Elec., Inc.*, No. 2:12-CV-00289, 2013 WL 2948948, at *3 (D. Utah June 14, 2013) (citation omitted). A motion to strike an affirmative defense must be brought by a party within 21 days of service of the answer pleading the defense. FED. R. CIV. P. 12(f)(2). Because Salt Lake County served its Answer to the amended complaint on August 31, 2018, the time to argue that an affirmative defense should be struck as insufficiently pled has long since passed. The court declines to reexamine the adequacy of the pleadings well after the close of discovery and after the parties have filed motions for summary judgment.[1]

Nelson also contends that her UPPEA claim was timely filed because her EEOC charge extended the time to file this claim. She points to Utah Code § 67-21-4(1)(b)(i)(A), which provides that employees of a political subdivision that has established an independent personnel board must file a lawsuit asserting a UPPEA claim "within 180 days after the day on which the employee has exhausted administrative remedies." Nelson argues that this extension of the statute of limitations applies to all administrative remedies, including proceedings before the EEOC for ADA claims

---

[1] Although Nelson does not cite this rule, a plaintiff may argue that a defendant failed to adequately state a legal defense in a Rule 12(c) motion for judgment on the pleadings. FED. R. CIV. P. 12(h)(2). The court finds that even if Nelson had filed a proper motion for a judgment on the pleadings, such a motion would be untimely at this juncture because it would delay trial. *See* FED. R. CIV. P. 12(c).

that are intertwined with her UPPEA claim. The court rejects this argument for two reasons. First, Nelson has not shown that Salt Lake County has enacted an ordinance creating an independent personnel board—a prerequisite to the extension of the standard 180-day statute of limitations. Second, even if Salt Lake County has enacted such an ordinance, Nelson would be required to exhaust her administrative remedies before any personnel board created by the county. *See* UTAH CODE § 67-21-4(1)(b)(i)(B). But Nelson has not presented evidence of exhaustion of her UPPEA claim. Thus, the court need not decide whether Utah Code § 67-21-4(1)(b)(i)(A) tolls the 180-day statute of limitations until the plaintiff exhausts related administrative remedies before the EEOC. If this subdivision applies, the court would lack subject matter jurisdiction over the UPPEA claim because Nelson failed to exhaust her administrative remedies for this claim before an independent personnel board. *See Hous. Auth. of Cty. of Salt Lake v. Snyder*, 44 P.3d 724, 727 (Utah 2002) (because failure to exhaust administrative remedies deprives a court of subject matter jurisdiction, it may be raised at any time); *State Farm Mut. Auto. Ins. Co. v. Narvaez*, 149 F.3d 1269, 1270–71 (10th Cir. 1998) ("[I]nsofar as subject matter jurisdiction is concerned, it has long been recognized that a federal court must, sua sponte, satisfy itself of its power to adjudicate in every case and at every stage of the proceedings.").

In short, if Utah Code § 67-21-4(1)(a) applies to Nelson's UPPEA claim, it is indisputably barred by the 180-day statute of limitations. If Utah Code § 67-21-4(1)(b) applies because Salt Lake County has established an independent personnel board, this court lacks subject matter jurisdiction because Nelson did not exhaust her administrative remedies for this claim. Accordingly, the court grants summary judgment in favor of Salt Lake County on the UPPEA claim.

## II.     THE § 1983 CLAIM

Under 42 U.S.C. § 1983, "Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law . . . ." Nelson asserted a claim that she was entitled to relief under § 1983 because Salt Lake County violated her procedural due process rights under the Fourteenth Amendment when they terminated her employment.[2]   Salt Lake County moved for summary judgment on this claim. The court denies the county's motion as to Nelson's procedural due process claim.

Tenured public employees have a property right to their continued employment and cannot be deprived of that right without procedural due process. *Cleveland Bd. of Educ. v. Loudermill*, 470 U.S. 532, 538–39 (1985); *Carnes v. Parker*, 922 F.2d 1506, 1509–10 (10th Cir. 1991). A protected employee is entitled to both pre-termination and post-termination procedures that afford the employee notice of the reasons for the termination and an opportunity to be heard. *Loudermill*, 470 U.S. at 546. The Supreme Court has laid out the procedural due process required before a tenured public employee is terminated:

> The essential requirements of due process [prior to termination] . . .
> are notice and an opportunity to respond. The opportunity to present
> reasons, either in person or in writing, why proposed action should
> not be taken is a fundamental due process requirement. The tenured

---

[2] The precise contours of Nelson's § 1983 claim are somewhat murky. The pleading for this claim is lengthy and less than precise. But Salt Lake County moved for summary judgment only on Nelson's procedural due process theory of recovery. Accordingly, the court need not decide at this stage of the litigation whether Nelson has properly asserted other violations of her legal or constitutional rights.

> public employee is entitled to oral or written notice of the charges
> against him, an explanation of the employer's evidence, and an
> opportunity to present his side of the story.

*Id.*

Nelson argues that Salt Lake County deprived her of her property right to her employment without due process. "Plaintiffs who seek to impose liability on local governments under § 1983 must prove that 'action pursuant to official municipal policy' caused their injury." *Connick v. Thompson*, 563 U.S. 51, 60 (2011) (citation omitted). Thus, because Nelson sued a government body rather than an individual, liability for this claim must be based on "a policy statement, ordinance, regulation, or decision officially adopted and promulgated by that body's officers." *Monell v. Dep't of Soc. Servs. of City of New York*, 436 U.S. 658, 690 (1978).

One of the official policies at issue here is the Salt Lake County Human Resources Policy 4-1000: Long Term Disability. This policy provides:

> Employees who apply for and are determined eligible for the
> Long-Term Disability Program (LTD) will be granted up to one year
> of medical leave without pay. The one-year period will be calculated
> from the last day worked (the date that initiated the three-month
> LTD elimination period) by the employee.

Under this policy, once Salt Lake County receives notice that an employee has applied for long-term disability benefits, the county provides "the employee with written notification that he/she will be placed in leave without pay status for one-year from the last day worked and will be terminated at the end of the one-year period if he/she cannot return to work." Additionally, one month prior to the scheduled termination date, Salt Lake County "will provide the employee with written notification of the pending termination date and instructions for applying for a reasonable accommodation if they are able to return to work."

Thus, Policy 4-1000 lays out the official procedures employed by Salt Lake County to terminate an employee who has been on long-term disability leave for over one year. Notably absent from these procedures, however, is a pretermination hearing that affords the employee an opportunity to challenge the basis of his or her termination and provide evidence in his or her favor. Instead, Policy 4-1000 sets a fixed termination date at one year from the last day worked and then provides that the employee will be terminated on that date if he or she does not return to work. Although the policy requires the county to give the employee instructions for applying for a reasonable accommodation one month before the termination date, this procedure falls short of the due process requirement that the employee be given an opportunity to provide reasons why he or she should not be terminated and to challenge the stated grounds for his or her termination. An ADA reasonable accommodation procedure does not, for example, give the employee a chance to argue that the termination date had been miscalculated, that the employee had not received adequate notice of the termination,[3] or that there are other reasons why Salt Lake County should not terminate the employee. Nor does it appear that the reasonable accommodation procedure would allow Nelson to argue that the scheduled termination should not occur because the county had not attempted to accommodate her disability in good faith.

Salt Lake County's actions in this case arguably confirm that its official policy is not to provide a pretermination hearing to employees terminated under Policy 4-1000. When the county provided its first notice of intent to terminate Nelson for unauthorized leave, it scheduled a

---

[3] Although Policy 4-1000 states that Salt Lake County should notify the employee of his or her termination date when it receives notice of the employee's application for long-term disability benefits, the county failed to provide the required notice until after the one-year period had already run, which is arguably no notice at all.

13

pretermination hearing. Nelson attended the hearing and convinced the county not to fire her for the reasons stated in the first notice. But when Salt Lake County issued its second notice of intent to terminate Nelson under Policy 4-1000, it did not provide her an opportunity to be heard prior to her termination. The county's actions further evidence that its official policy was to not provide a pretermination procedure to employees terminated under Policy 4-1000.

Accordingly, there are disputes of material fact that preclude summary judgment on Nelson's procedural due process claim brought under § 1983. The court denies summary judgment on this claim.

## III.   THE ADA CLAIMS

Nelson asserts three claims under the ADA: (1) failure to accommodate, (2) wrongful termination, and (3) hostile work environment. Salt Lake County argues that it is entitled to summary judgment for each of these claims.

### A.   *Failure to Accommodate*

The ADA prohibits an employer from discriminating against a disabled employee by failing to make "reasonable accommodations to the known physical or mental limitations of an otherwise qualified individual with a disability." 42 U.S.C. § 12112(b)(5)(A). An employee asserting a failure to accommodate claim has a prima facie burden to show (1) that the employee was disabled, (2) that the employee was otherwise qualified to perform the essential functions of his or her job, (3) that the employee requested a plausibly reasonable accommodation, and (4) that the employer failed to provide a reasonable accommodation. *Aubrey v. Koppes*, 975 F.3d 995, 1005 (10th Cir. 2020). An employee can satisfy the third element if he or she shows that the employer failed to engage in an interactive process with the employee regarding potential reasonable

accommodations. *Id.* at 1007; *Smith v. Midland Brake Inc., a Div. of Echlin, Inc.*, 180 F.3d 1154, 1172 (10th Cir. 1999).

Salt Lake County argues that it is entitled to summary judgment on Nelson's failure to accommodate claim for two reasons. First, it asserts that Nelson was not qualified to perform the essential functions of her position. Second, it contends that it did not fail to engage in the interactive process.

>     1)     Qualified Individual

A disabled person is a qualified individual under the ADA if the individual, "with or without reasonable accommodation, can perform the essential functions of the employment position that such individual holds or desires." 42 U.S.C. § 12111(8). Nelson does not contend that she was able to do her job without accommodation. Thus, to determine whether Nelson was a qualified individual, a factfinder must decide whether she was able to perform the essential functions of her position with a reasonable accommodation at the time she was terminated or soon thereafter. *See Aubrey*, 975 F.3d at 1006. "The determination as to whether an individual is a 'qualified individual with a disability' must be made as of the time of the employment decision." *Cisneros v. Wilson*, 226 F.3d 1113, 1129 (10th Cir. 2000) (citation omitted).

To prevail on its motion, Salt Lake County must show that there is no dispute of material fact that would preclude summary judgment on the issue of whether Nelson was a qualified individual. In other words, the county must show that it is undisputed that no reasonable accommodation would have permitted Nelson to perform the essential functions of her position as an employee benefits specialist. The court denies summary judgment on this issue because Nelson cites evidence that would support the conclusion that a reasonable accommodation would have allowed her to successfully return to work.

Nelson asserts that one of the accommodations that would have permitted her to return to work after her December 2015 panic attack would have been minimizing contact with, and being protected from, the co-workers who were bullying her. Evidence in the record supports this conclusion. Despite her life-long struggle with bipolar disorder, Nelson held her position as an employee benefits specialist with Salt Lake County for ten years prior to the December 2015 incident with her co-workers. From 2005 to 2010, Nelson held her position without any formal accommodations. From 2010 through 2015, Nelson performed her work duties with what the county deemed to be the reasonable accommodation of three days off per month to deal with her disorder. Nelson produced evidence that it was the bullying behavior of her co-workers that exacerbated her bipolar disorder and made her working conditions intolerable. A reasonable jury could conclude from this evidence that an accommodation that shielded Nelson from the harassment of her co-workers would have been sufficient to permit Nelson to reassume her work duties, just as she had done for a decade before her December 2015 panic attack.[4]

Additional evidence supports a conclusion that Nelson would have been able to return to work with accommodations. In a January 31, 2016 email, for example, one of Salt Lake County's employees expressed confidence that Nelson could successfully return to work if her supervisor would protect her from her co-workers' bullying. Moreover, LINA discontinued Nelson's long-term disability benefits on December 16, 2016, finding that a review of her medical records showed that Nelson was then able to perform her job duties.

---

[4] Although not a formal ADA accommodation, Salt Lake County had done something similar in the past. One of the co-workers had accused Nelson of timecard fraud in 2009. After the county found the accusation to be unfounded, it took measures to ensure that the co-worker no longer audited Nelson's timecards. Nelson was able to perform her job for over five years before the bullying behavior resurfaced.

Salt Lake County argues that it is entitled to summary judgment because Nelson did not obtain a written medical release to return to work in any capacity. But the county does not cite any authority supporting the proposition that the absence of a medical release trumps all other evidence indicating that a reasonable accommodation would have permitted an employee to perform the essential functions of her employment. Moreover, Nelson presented evidence that her failure to acquire a medical release was due to Salt Lake County's failure to provide information that her doctor needed to assess her ability to return to work. *Cf. Aubrey*, 975 F.3d at 1008 ("[A] reasonable jury could find that the County foreclosed the possibility that Aubrey could obtain a doctor's fitness-for-duty certification . . . by giving her less [than] twenty-four-hours' notice of the pre-termination meeting and not giving her any additional time after that meeting to attempt to obtain the needed information from her treating health care providers.").

Salt Lake County also contends that it should prevail as a matter of law because a request for additional leave, beyond the 12 months that the county had already provided, for mental health treatment was per se an unreasonable accommodation. *See Boykin v. ATC/VanCom of Colo., L.P.*, 247 F.3d 1061, 1065 (10th Cir. 2001) ("[E]mployers are not obligated to retain a disabled employee on unpaid leave indefinitely or for an excessive amount of time."). But additional leave was not the only potential accommodation at issue here. As noted above, a reasonable jury could conclude that protecting Nelson from her co-workers' bullying was a reasonable accommodation that would have allowed her to perform the essential duties of her position. Thus, the court need not address other potential accommodations, such as additional leave.

2)      Failure to Engage in the Interactive Process

To facilitate a reasonable accommodation, "[t]he federal regulations implementing the ADA envision an interactive process that requires participation by both" the employer and the

17

employee. *Dewitt v. Sw. Bell Tel. Co.*, 845 F.3d 1299, 1315 (10th Cir. 2017) (alteration in original) (citation omitted). An employee's request for a reasonable accommodation for his or her disability triggers the employer's obligation to participate in this interactive process. *E.E.O.C. v. C.R. England, Inc.*, 644 F.3d 1028, 1049 (10th Cir. 2011). "The interactive process requires the good faith participation of both the employer and employee." *Aubrey*, 975 F.3d at 1007. The process is flexible and "will necessarily vary from situation to situation," but must include "good-faith communications between the employer and employee." *Id.* (quoting *Bartee v. Michelin N. Am., Inc.*, 374 F.3d 906, 916 (10th Cir. 2004)). "This is imperative because each side will possess different information, all of which is critical to determining whether there is a reasonable accommodation that might permit the disabled employee to perform the essential functions of her job." *Id.* A party that "fails to communicate, by way of initiation or response" or "obstructs or delays the interactive process" does not engage in the interactive process in good faith. *Smith v. Midland Brake, Inc.*, 180 F.3d 1154, 1172 (10th Cir. 1999) (citation omitted).

Nelson cites evidence that could support a conclusion that Salt Lake County failed to engage in the interactive process in good faith. Nelson claims that in June 2016, a county employee told her that she needed to be "100 percent" to return to work because the county could not afford for her to take time off for doctors' appointments. In November 2016, a county human resources employee also suggested that Nelson had to obtain a medical release prior to holding a meeting to discuss her return to work. Moreover, Nelson testified that she attempted to reach out to Salt Lake County employees to find out whether she would be working with the employees that had bullied her and where her workspace would be. Nelson also asked for an updated and accurate job description. She asserts that the county refused to engage in a conversation with her or answer her questions until she provided a medical release to return to work. Nelson further claimed that her

18

doctor would not provide the release until he knew the answers to these questions. Based on these facts, a jury could conclude that Salt Lake County's alleged statements and rigid position regarding communicating with Nelson about possible accommodations violated its duty to interact with her in good faith.

Salt Lake County argues that it is entitled to summary judgment on the interactive process claim because it provided updated job descriptions on at least three occasions. But Nelson testified in her deposition that none of these job descriptions was adequate, setting up a dispute of fact to be decided by a jury.

Citing *Templeton v. Neodata Services., Inc.*, 162 F.3d 617 (10th Cir. 1998), Salt Lake County also asserts that, as a matter of law, Nelson was at fault for failing to engage in the interactive process because she did not provide a medical release to return to work from her doctor. But *Templeton* is inapposite. In that case, the employee refused to authorize her doctor to release requested medical information and she declined to meet with her employer to discuss her return to work. *Id.* at 618–619. Here, there appears to have been a logjam in the interactive process, with the county declining to talk to Nelson until she provided a release, and with Nelson unable to provide the release until she received information from the county. Whether the facts are as Nelson alleges and which party is at fault for any breakdown in communication are classic jury questions.

Finally, Salt Lake County contends that even if it failed to engage in the interactive process, it should prevail on the failure to accommodate claim because Nelson cannot prove that a reasonable accommodate was possible. *See Hennagir v. Utah Dep't of Corr.*, 587 F.3d 1255, 1265 (10th Cir. 2009). As discussed above, however, the county has not shown that it is entitled to summary judgment on the issue of whether Nelson could have returned to work if she had been afforded a reasonable accommodation.

19

*        *        *

In short, Salt Lake County has not shown that it should prevail as a matter of law on the issues of whether Nelson was a qualified individual within the meaning of the ADA and whether the county failed to engage in the interactive process. Accordingly, the court denies summary judgment on Nelson's failure-to-accommodate claim.

B.      *Wrongful Termination*

The ADA prohibits employers from discriminating "against a qualified individual on the basis of disability in regard to . . . discharge of employees." 42 U.S.C. § 12112(a). To prove that Salt Lake County violated this provision by wrongfully terminating her, Nelson must establish "(1) that [s]he is a disabled person within the meaning of the ADA; (2) that [s]he is qualified, that is, with or without reasonable accommodation (which [s]he must describe), [s]he is able to perform the essential functions of the job; and (3) that the employer terminated [her] because of [her] disability." *White v. York Int'l Corp.*, 45 F.3d 357, 360–61 (10th Cir. 1995). Thus, unlike a failure-to-accommodate claim, an employee must prove that the employer acted with discriminatory animus against the employee because of the employee's disability. *Aubrey*, 975 F.3d at 1014.

Nelson claims that Salt Lake County is liable for discrimination because it terminated her because of her disability. The parties agree that Nelson is disabled. And, as discussed above, whether she was a qualified individual is a question for the jury. Salt Lake County argues, however, that it is entitled to summary judgment on the final element of Nelson's discrimination claim because it terminated Nelson under its 12-month-leave policy and not because of disability discrimination.

20

Where there is no direct evidence of discriminatory animus, courts employ a *McDonnell-Douglas* burden shifting analysis. *Id.* The employee must first establish a prima facie case of discrimination—a requirement that the Tenth Circuit has described as not being onerous. *Id.* The burden then shifts to the employer "to articulate a 'legitimate, nondiscriminatory reason'" for the termination. *Lincoln v. BNSF Ry. Co.*, 900 F.3d 1166, 1193 (10th Cir. 2018) (quoting *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802 (1973)). If the employer states a nondiscriminatory reason for the termination, the burden shifts back to the employee

> to demonstrate that the employer's stated reason is a pretext for discrimination. "A plaintiff may show pretext by demonstrating the proffered reason is factually false, or that discrimination was a primary factor in the employer's decision." "This is often accomplished by revealing weakness, implausibilities, inconsistencies, incoherences, or contradictions in the employer's proffered reason, such that a reasonable fact finder could deem the employer's reason unworthy of credence."

*Id.* (citations omitted).

Salt Lake County does not contest that Nelson has established a prima facie case of discrimination. As to the second step, the county states that the nondiscriminatory reason for Nelson's termination was a neutral application of its 12-month-leave policy. Salt Lake County argues that it is entitled to summary judgment on Nelson's wrongful termination claim because she has not satisfied the third step by producing evidence suggesting that the county's stated reason for her termination was pretextual. The county contends that the fact that it issued two separate notices of intent to terminate Nelson—the first for "unauthorized leave" and the second for unpaid leave exceeding 12 months—is not evidence of pretext because the notices are not inconsistent. *See Hare v. Denver Merch. Mart, Inc.*, 255 F. App'x 298, 305 (10th Cir. 2007) (unpublished) ("A reasonable jury could conclude that the inconsistency in these statements [is] evidence that all of

the reasons proffered are merely pretextual."). The court, however, rejects Salt Lake County's argument and finds that Nelson has produced adequate evidence of pretext to place the issue of discriminatory animus before a jury.

First, the two notices of intent to terminate Nelson evidence pretext, not because they are mutually inconsistent, but because they were issued in rapid succession. Salt Lake County issued the first notice of intent to terminate on February 21, 2017. This notice criticized Nelson for failing to notify it of LINA's decision to terminate long-term disability benefits and for not contacting the county to discuss her return to work. The county stated that it intended to terminate Nelson for violating its policies on unauthorized leave. At a March 8, 2017 pretermination hearing, Nelson argued that she could not be terminated for unauthorized leave while she was on unpaid leave. On March 13, 2017, Salt Lake County sent two letters to Nelson. The fist letter stated that, based upon the information that Nelson had provided in her pretermination hearing, the county was retracting the first notice of intent to terminate her employment. The second letter notified Nelson that she would be terminated for being on medical leave without pay for more than 12 months. On March 15, 2017, Salt Lake County issued a second notice of intent to terminate Nelson under the 12-month leave policy. Thus, it appears that once the county discovered that the first stated reason for terminating Nelson would not work, it immediately looked for a second reason to fire her. From this evidence, a jury could conclude that the reasons for termination stated in both notices were pretextual and that Salt Lake County was merely casting about for a reason to terminate Nelson that was not blatantly discriminatory.

Second, Nelson has presented other evidence of pretext. She testified that before she took medical leave, her manager suggested that she apply to another position, indicating that Salt Lake County no longer wanted to employ her. Nelson also testified that in June 2016, a human resources

employee told her that she needed to be "100 percent" to return to work because the county could not afford for her to take time off for doctors' appointments. Such a statement could indicate that Salt Lake County did not want her to return to work and did not want to accommodate her disability if she did. Finally, Nelson testified that other employees had been given extensions of time to return to work while she had not. *See Lincoln*, 900 F.3d at 1193 (noting that "preferential treatment given to employees outside the protected class" may give rise to an inference of discrimination).

In sum, Nelson has presented evidence that the stated reason for her termination was pretextual. "So long as the plaintiff has presented evidence of pretext (by demonstrating that the defendant's proffered non-discriminatory reason is unworthy of belief) upon which a jury could infer discriminatory motive, the case should go to trial. Judgments about intent are best left for trial and are within the province of the jury." *Randle v. City of Aurora*, 69 F.3d 441, 453 (10th Cir. 1995). Accordingly, the court denies summary judgment on Nelson's wrongful termination claim.

C.      *Hostile Work Environment*

"[T]he elements of [a hostile work environment] claim are: (1) the plaintiff is a member of a protected group (i.e., he is 'disabled' as defined by the ADA); (2) the plaintiff was subject to unwelcome harassment; (3) the harassment was based on the alleged disability; and (4) due to the harassment's severity or pervasiveness, the harassment altered a term, condition, or privilege of the plaintiff's employment and created an abusive working environment." *Callahan v. Commc'n Graphics, Inc.*, 657 F. App'x 739, 746–47 (10th Cir. 2016) (unpublished). "A plaintiff claiming hostile work environment 'must show that a rational jury could find that the workplace [was] permeated with discriminatory intimidation, ridicule, and insult, that is sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working

23

environment.' General harassment alone is not actionable." *Williams v. FedEx Corp. Servs.*, 849 F.3d 889, 897 (10th Cir. 2017) (alteration in original) (citation omitted).

Nelson asserts that she was subjected to a hostile work environment because her co-workers bullied her through false allegations of timecard abuse and other complaints to superiors. Nelson further contends that Salt Lake County knew about the harassment but did nothing to stop it. Salt Lake County argues that it is entitled to summary judgment on Nelson's hostile working environment claim because she has not cited evidence that the harassment perpetrated by her co-workers was based upon her disability. The court agrees with the county.

Nelson presented evidence that her co-workers bullied her by accusing her of timecard fraud and making complaints to superiors that she turned in reports late. Nelson also testified that one of the co-workers once stated that she did not like Nelson because Nelson was the "blond cheerleader type." The only evidence that Nelson cites in support of her claim that her co-workers' harassment was based on her bipolar disorder was an email sent by a Salt Lake County employee stating that one of the co-workers "knows all of the buttons to push to upset" Nelson. But this statement only suggests that the co-worker knew how to get a reaction from Nelson. It does not show that her co-workers ever bullied her because of her disability.

Without any evidence that her co-workers' harassment was based upon her bipolar disorder, Nelson cannot prevail on her hostile work environment claim. The court, therefore, grants summary judgment in favor of Salt Lake County on this claim.

## CONCLUSION AND ORDER

For the reasons stated above, the court GRANTS IN PART and DENIES IN PART Salt Lake County's motion for summary judgment. The court grants summary judgment in favor of Salt Lake County on Nelson's UPPEA claim and her hostile work environment claim under the

ADA. The court denies summary judgment on Nelson's procedural due process claim, her failure to accommodate claim under the ADA, and her wrongful termination claim under the ADA.

Signed March 30, 2022.

BY THE COURT

Jill N. Parrish
United States District Court Judge